IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

**ANGELIA WILLIAMS**                                                                                           **PLAINTIFF**

v.                                              Case No. 1:24-cv-01009

**HARMONY GROVE**
**SCHOOL DISTRICT**                                                                                            **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant Harmony Grove School District ("Defendant"). (ECF No. 16). Plaintiff Angelia Williams ("Plaintiff") has responded. (ECF No. 19). The Court finds the matter ripe for consideration.

### I. BACKGROUND

This is an employment discrimination action that arises from an incident that took place on June 15, 2023, at a school basketball training camp sponsored by Defendant. (ECF No. 19, at 1). Plaintiff and a school basketball coach engaged in a verbal confrontation that ultimately led to Plaintiff's suspension without pay from her job with Defendant. (ECF No. 17, at 5). Subsequently, Plaintiff filed the instant action alleging that she was discriminated against based on her gender and retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-101, *et seq*. (ECF No. 2, at 1; ECF No. 17, at 1).

Plaintiff began her employment with Defendant—an entity providing K-12 educational services in Ouachita County, Arkansas—around August 2017. (ECF No. 19-1, at 1). On July 1, 2022, Plaintiff was under two contracts with Defendant. (ECF No. 19-1, at 2). Under the first contract, Plaintiff was employed as a reading interventionist aide in the special education department. (ECF No. 19-1, at 2). Under the second contract, Plaintiff was employed as a bus

driver. (ECF No. 19-1, at 2). On July 1, 2023, Plaintiff was due to renew her contract as a special education aide. (ECF No. 16-2).

Separate from, but related to the instant case, in May 2023, Plaintiff filed a complaint to the Arkansas State Board of Education regarding Defendant and Principal Jeff Mock's ("Principal Mock") handling of her son's accommodations and testing room sizes. (ECF No. 19-1, at 22). Plaintiff requested that her complaints be kept anonymous, and the receiver at the Arkansas State Board of Education confirmed that they would honor her request for anonymity. (ECF No. 19-1, at 22).

On June 14, 2023, and June 15, 2023, Plaintiff and her son—who was a student at the school—attended a basketball camp sponsored by Defendant at a high school gymnasium. (ECF No. 18, at 2). On June 15, 2023, Plaintiff volunteered to work at the gymnasium's entry gate monitoring visitor passes and accepting money for the basketball camp. (ECF No. 19-1, at 3-4). One of the people helping run the basketball camp was the high school boys' basketball coach Eddie Potts ("Coach Potts"). (ECF No. 18, at 2).

On June 15, 2023, Plaintiff confronted Coach Potts because she believed her minor son was being bullied by other students at the basketball camp and that Coach Potts was allowing it to happen. (ECF No. 19-1, at 4; ECF No. 18, at 2). Plaintiff was located several rows above Coach Potts in the gym's bleachers with roughly fifty people present in the gym. (ECF No. 19-1, at 6). During the confrontation, Plaintiff reminded Coach Potts of the state and federal regulations about bullying and suggested that he was aware of bullying incidents but chose not to do anything about them. (ECF No. 18, at 3). Plaintiff then stated that her son had been attending counseling because of the bullying. (ECF No. 19-1, at 9). Plaintiff further stated that several other basketball players were part of the group bullying her son. (ECF No. 19-1, at 9). She then told Coach Potts that he

2

needed to "[g]et [his] shit together" and that he "[b]etter get [his] ass in gear." (ECF No. 19-3, at 52; ECF No. 19-1, at 10). Plaintiff admitted that she was angry and did not clearly remember everything that she said during the confrontation. (ECF No. 19-1, at 11). Plaintiff also states that at some point during the confrontation she stood up and raised her voice at Coach Potts. (ECF No. 18, at 4).

On the evening of June 15, 2023, Plaintiff texted Coach Potts that "I am very sorry that I spoke to you in the manner I did. I know that was not the venue for me to speak with you, and certainly not an ugly manner." (ECF No. 16-7; ECF No. 18, at 5). Coach Potts then called Plaintiff. (ECF No. 18, at 5). Plaintiff again apologized and Coach Potts made known the seriousness of Plaintiff's bullying allegations and confirmed that she wanted to procced to report the students. (ECF No. 19-1, at 16; ECF No. 18, at 5).

The confrontation was then reported to the superintendent of the district, Albert L. Snow ("Superintendent Snow"). (ECF No. 19-1, at 13). The district administrators felt that Plaintiff's behavior was "unbecoming, unprofessional, disorderly based on her tone of voice, choice of words, disrespectful statements, and efforts to incite altercations between other adults." (ECF No. 18, at 4). Coach Potts felt that Plaintiff's confrontation was inappropriate given the public location where it occurred. (ECF No. 18, at 5). Plaintiff agreed that she was disrespectful but disagreed that her behavior was disorderly. (ECF No. 18, at 5). Plaintiff admitted that she did lose her temper during the confrontation but that it did not represent her values. (ECF No. 18, at 5). Plaintiff also believed there would have been no issue if she had not lost her temper and that she was acting as a parent to her son during the confrontation, not performing her job duties. (ECF No. 18, at 5).

On June 20, 2023, Superintendent Snow sent Plaintiff a Notice of Recommended Termination of Employment Contract because of her conduct on June 15, 2023. (ECF No. 18, at

5). Superintendent Snow believed that Plaintiff's conduct hampered her ability to effectively perform her job duties and warranted her termination. (ECF No. 18, at 5). The notice also informed Plaintiff that she was entitled to a hearing before the district school board. (ECF No. 18, at 5). Plaintiff requested this hearing and appealed Superintendent Snow's notice to the district school board. (ECF No. 18, at 5).

On July 20, 2023, the district school board met and determined that Plaintiff violated District Policy 8.45 Classified Personnel Code of Conduct. (ECF No. 18, at 6). During the hearing, Plaintiff was allowed to testify on her own behalf. (ECF No. 18, at 6). The school board declined to accept Superintendent Snow's recommendation that Plaintiff be terminated, and instead reduced the penalty to a one-semester suspension for the start of the 2023-2024 school year. (ECF No. 18, at 6).

Following the hearing and her suspension, Plaintiff understood that she was still an employee of the school district and would be allowed to return to work at the start of the January 2024 semester. (ECF No. 18, at 6). Superintendent Snow informed Plaintiff that while her current special education position would need to be filled due to necessity, there would be a new position available to Plaintiff at the end of her suspension. (ECF No. 19-1, at 18). Plaintiff's future position would be different but at the same pay level as her former position. (ECF No. 18, at 6).

In August 2023, per a request from Jennifer Cheatham ("Ms. Cheatham"), the Defendant's director of special education, Plaintiff returned to Defendant's campus to retrieve her personal belongings from her classroom. (ECF No. 19-1, at 32). Ms. Cheatham was responsible for where each of the special education reading interventionists would be assigned for the upcoming contract year. (ECF No. 18, at 9). While at the campus, Ms. Cheatham informed Plaintiff that the school district would need to train another employee to serve as a special education reading interventionist

during Plaintiff's suspension. (ECF No. 18, at 6). Ms. Cheatham also directly informed Plaintiff that she would not be working in the special education department upon her return from suspension. (ECF No. 19-1, at 23). However, Plaintiff understood that she was at least guaranteed to have a non-special education aide position upon her return the next semester. (ECF No. 18, at 8). Plaintiff did not attempt to speak with Superintendent Snow about this conversation with Ms. Cheatham. (ECF No. 19-1, at 24).

In August 2023, Plaintiff and her husband pulled their son from in-person schooling and switched to virtual schooling because of continuing bullying problems. (ECF No. 19-1, at 26). Plaintiff stated that the virtual school was much better for her son's emotional health and that it helped prevent her son from being bullied. (ECF No. 19-1, at 27). Despite this, Plaintiff stated that she wished her son could still attend Defendant's school. (ECF No. 19-1, at 27).

In spring of 2023, Boeing Company had begun efforts to convince Plaintiff's husband to leave his job with Lockheed Martin and switch to Boeing. (ECF No. 18, at 10). Plaintiff's husband eventually accepted a job with Boeing in September 2023. (ECF No. 19-1, at 26). Part of the reason that Plaintiff's husband accepted the job was because of the situation with Defendant and the tensions that Plaintiff was experiencing within her community from the suspension. (ECF No. 19-1, at 26).

On September 19, 2023, Plaintiff submitted her resignation to Defendant. (ECF No. 18, at 9). Plaintiff stated that the reason for her resignation was because she would not be able to continue to work in the special education department upon returning from suspension, which impacted the completion of her Master of Arts degree in Teaching.[1] (ECF No. 18, at 9). In December 2023,

---

[1] Plaintiff was pursuing a Master of Arts degree in Teaching-Special Education at Henderson State University. (ECF No. 19-1, at 25). A requisite of this program was that Plaintiff be employed as a teacher of record with a provisional license, a special education paraprofessional, or placed in an internship setting. (ECF No. 19-1, at 25). Plaintiff's suspension prevented her from adhering to this requisite and led to Plaintiff being dropped from her degree classes

5

Plaintiff and her family relocated to Huntsville, Alabama. (ECF No. 18, at 10).

On February 7, 2024, Plaintiff filed her Complaint in this case. (ECF No. 2). In the Complaint, Plaintiff argues that Defendant: (1) discriminated against her based on her gender in violation of Title VII and the ACRA; and (2) retaliated against her in violation of Tile VII and the ACRA. (ECF No. 2).

On December 10, 2024, Defendant filed the instant Motion for Summary Judgment. (ECF No. 16). Defendant argues that Plaintiff cannot establish circumstances that would give rise to an inference of gender discrimination. (ECF No. 17, at 12). Defendant also argues that it had a legitimate, nondiscriminatory reason for issuing the recommended Notice of Termination that resulted in a one-semester suspension. (ECF No. 17, at 19). Defendant further argues that Plaintiff cannot establish a prima facie claim of retaliation. (ECF No. 17, at 15).

## II.  STANDARD OF REVIEW

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either

---

until she could secure another special education position. (ECF No. 19-1, at 25). Plaintiff never raised this issue with Superintendent Snow nor did Plaintiff reach out to Defendant to see what positions would be available upon her return from suspension. (ECF No. 19-1, at 25-26).

party. *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving part's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007).

### III.  DISCUSSION

The Court faces two general issues in the instant motion: (1) whether Defendant is entitled to summary judgment as to Plaintiff's gender discrimination claim; and (2) whether Defendant is entitled to summary judgment as to Plaintiff's retaliation claim. The Court will review each in turn.

Title VII "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). Under Title VII, it is unlawful for an employer to discriminate against an individual with respect to "compensation, terms, conditions, or privileges of employment" because of that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Title VII and ACRA claims are analyzed using the same analytical framework. *See Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) (applying the *McDonnell Douglas* burden-shifting test to a section 1983 claim); *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 n.2 (8th Cir. 2003) (applying *McDonnell Douglas* to section 1981 claim); *Crone v. United Parcel Serv., Inc.,* 301 F.3d 942, 945 (8th Cir. 2002) (applying *McDonnell Douglas* to an ACRA claim). Therefore, the Court's analysis of Plaintiff's Title VII claims also applies to her ACRA claims.

**A. Gender Discrimination**

To succeed on her gender discrimination claim, Plaintiff must show direct evidence of discrimination or evidence sufficient to create an inference of discrimination. *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016). "Evidence is 'direct' if it establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employer's decision." *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). Here, Plaintiff does not present any direct evidence of gender discrimination.

Without direct evidence of gender discrimination, Plaintiff must "create[] an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*." *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008) (internal quotation marks omitted). Under this familiar framework, a plaintiff bears the burden of establishing a prima facie case of discrimination. *Id.* If the plaintiff meets this initial burden, a presumption of discrimination is created, and the defendant must then "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell*, 822 F.3d at 435. If the defendant meets this burden, the plaintiff must then "prove the proffered justification is merely a

8

pretext for discrimination." *Id.*

As stated above, Plaintiff bears the initial *McDonnell Douglas* burden of establishing a prima facie case of gender discrimination. She must demonstrate that: "(1) [she] is a member of a protected class; (2) [she] was qualified to perform her job; (3) [she] suffered an adverse employment action; and (4) [she] was treated differently from similarly situated males." *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 631 (8th Cir. 2005); *see also Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005). In establishing a prima facie case, "the plaintiff's burden 'is not onerous.'" *McGinnis v. Union Pacific R.R.*, 496 F.3d 868, 873 (8th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). However, a failure to establish any element of a prima facie case defeats a Title VII discrimination claim. *Tatum v. City of Berkeley*, 408 F.3d 543, 550-51 (8th Cir. 2009).

### 1. Prima Facie Stage

The Court will start with the fourth element of gender discrimination—whether Plaintiff is similarly situated to Coach Potts or the other male coaches. If Plaintiff is unable to establish that she was similarly situated to the male coaches as she alleges, she will be unable to make a prima facie case for gender discrimination, and her claim will fail.

Plaintiff bears the burden of showing that employees used for comparison are "similarly situated in all relevant respects." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016) (applying the "similarly situated in all relevant respects" standard at the prima facie stage). "The individuals used for comparison must have dealt with the same supervisor, have been subjected to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1044 (8th Cir. 2007). In addition, the individuals used for comparison must have held the same position.

9

*See Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1082 (8th Cir. 2010).

Defendant argues that the only similar conduct Plaintiff alleges from Coach Potts and the other coaches is that they curse with students during practice or at games. (ECF No. 17, at 13). Defendant also notes that Plaintiff engaged in a several-minutes-long accusatory confrontation that included her cursing at Coach Potts several times in front of other people. (ECF No. 17, at 13). Defendant states that Plaintiff mentioned the mental health of her son during the confrontation. (ECF No. 17, at 14). Defendant argues that Plaintiff's conduct was not similarly situated to male coaches because, during the confrontation, Plaintiff accused Coach Potts and Principal Mock of violating state and federal regulations. (ECF No. 17, at 14).

Plaintiff notes that one of the key reasons Defendant viewed the confrontation as unprofessional was because it took place in front of other people. (ECF No. 19, at 12). However, Plaintiff states that one witness sent her a text message saying she only saw Plaintiff upset and crying and could not hear what was being said between Plaintiff and Coach Potts. (ECF No. 19, at 14). Plaintiff maintains that Coach Potts and the other male coaches are known for using curse words in front of the sports players and other students. (ECF No. 19, at 13). Plaintiff also states that she has seen Coach Potts red in his face and yelling at referees during games. (ECF No. 19, at 14). Plaintiff argues that whether Plaintiff's job duties were identically situated to Coach Potts' duties and the other male coaches' duties is irrelevant. (ECF No. 19, at 15). Plaintiff contends that the Court should consider only the similarity of her behavior to that of the male coaches and not whether she was identically situated to the male coaches in all other aspects. (ECF No. 19, at 15).

Defendant argues in its reply that Plaintiff must show the real motivation behind her suspension was based on her gender, and she fails to do so. (ECF No. 22, at 3). Defendant

10

contends that, even if was true that she was suspended because of her complaints about her son's bullying, it has nothing to do with her gender and cannot survive a claim of gender discrimination under Title VII. (ECF No. 22, at 4). Defendant points out that Plaintiff admitted that her behavior was disrespectful and did not represent her values. (ECF No. 22, at 8). Defendant also points out that Plaintiff admitted it was not the proper venue to speak in such an ugly manner towards Coach Potts. (ECF No. 22, at 8).

Plaintiff fails to provide evidence that she is similarly situated with the comparators in all relevant respects. Plaintiff does not share job duties with the comparators, she does not share a supervisor with the comparators, and she fails to show that they engaged in the same conduct without mitigating or distinguishing circumstances. *See Davis v. Kimbel Mech. Sys., Inc.*, 322 F.R.D. 470, 489 (W.D. Ark. 2017) (analyzing whether the plaintiff was similarly situated with comparators in areas like job duties, pay scale, and supervisors before finding that the plaintiff was not the least bit similarly situated as her chosen comparators).

Plaintiff argues that she is similarly situated to the comparators because their actions are similar. Plaintiff provides that she and Coach Potts were both angry, said curse words, and did so in public in front of other people. However, even with the burden being low at the prima facie stage and all reasonable inferences resolved in her favor, Plaintiff's actions involved too many distinguishing circumstances to allow a finding that she is similarly situated as the comparators. Distinguishing circumstances with Plaintiff's confrontation include the following: speculation that Coach Potts and Principal Mock were violating federal and state law; references to her son's mental health; a confrontation duration of four-to-five-minutes; the use of at least two curse words; and references to boys that were bullying her son. Plaintiff offers no evidence to show that the nature of Coach Potts' incident with the referees was similar other than he was angry. Accordingly,

11

the Court finds that Plaintiff is not similarly situated to Coach Potts or the male coaches in all relevant aspects.

Plaintiff requests that the Court review her similarly situated status using a "low- threshold" standard that only requires that the employees "are involved in or accused of the same or similar conduct and are disciplined in different ways." *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). To support that she is similarly situated to Coach Potts and the male coaches pursuant to the "low-threshold" standard, Plaintiff cites to *Wimbley v. Cashion*, 588 F.3d 959 (8th Cir. 2009). In *Wimbley*, the Eighth Circuit affirmed a district court ruling that two correctional officers were similarly situated at the prima facie stage because they were both involved in an incident where they pepper-sprayed inmates but were disciplined in different ways. *Id*. at 962.

However, *Wimbley* is distinguishable from the case at bar. In *Wimbley*, the Court of Appeals for the Eighth Circuit noted that when the district court applied the "low-threshold" standard, it found that the individuals were similarly situated because they shared the same supervisor and were both involved in an incident containing the same item. *Id*. Even under this low-threshold standard, the district court looked at more than just the comparators' actions in determining if they were similarly situated. In the instant action, Plaintiff fails to show that she was similarly situated with Coach Potts and the male coaches in anything other than possibly her being angry and cursing. Further, as noted above, Plaintiff's confrontation with Coach Potts differed from that of Coach Potts with the referee and "differences in how they engaged in that dispute can prevent them from being considered similarly situated." *Sterling v. CenterPoint Energy Servs. Co., LLC*, No. 4:20-CV-4065, 2022 WL 567059, at *4 (W.D. Ark. Feb. 24, 2022) (citing *Ward v. Procter & Gamble Paper Products Co.*, 111 F.3d 558, 561 (8th Cir. 1997)).

Viewing the facts presented by Plaintiff in the light most favorable to her as the non-moving party, a reasonable fact finder could not conclude that Plaintiff and the comparators were similarly situated. Thus, Plaintiff has failed to allege facts sufficient to support the fourth element of her prima facie discrimination claim, and her claim fails as a matter of law.

### 2. Non-Discriminatory Reason

Assuming *arguendo* that Plaintiff did meet the initial burden and could establish a prima facie case of gender discrimination, Defendant must now "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell*, 822 F.3d at 435. This is a light burden, as it is "one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Failure to follow an established company policy is a legitimate, non-discriminatory ground for action. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (citing *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003)). Defendant articulates that Plaintiff displayed inappropriate conduct that undermined her ability to effectively perform her employment duties and that she violated Defendant's code of conduct. Thus, the Court finds that Defendant has articulated a legitimate non-discriminatory reason for the recommendation of termination and the suspension.

### 3. Pretext

Again, assuming *arguendo* that Plaintiff could reach the third step in the burden-shifting framework, the Court finds that Plaintiff has failed to show that Defendant's non-discriminatory rationale for the recommendation and later suspension is a pretext for gender discrimination.

Plaintiff must demonstrate that Defendant's proffered reason is a pretext for unlawful discrimination or retaliation. *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011); *see also Miners v. Cargill Comms., Inc.*, 113 F.3d 820, 823 (8th Cir. 1997). "One way a plaintiff can

show that a defendant's proffered reason was pretext is by alleging facts demonstrating that defendant 'treated similarly-situated employees in a disparate manner.'" *Sterling*, 2022 WL 567059, at *4 (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012)). At the prima facie stage, the Court found that under both standards Plaintiff failed to establish that she is similarly situated to the comparators. Now, at the pretextual stage, the standard for whether "someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1126 (8th Cir. 2017) (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014)). Plaintiff brings forward no additional evidence that would suggest Defendant's reason for the recommendation of termination or suspension was pretextual. Thus, the Court finds that even if Plaintiff had successfully established her prima facie claim for gender discrimination, she fails to present evidence to establish that Defendant's non-discriminatory reason was a pretext for gender motivated discrimination. Accordingly, when viewing the facts in a light most favorable to Plaintiff, the Court finds that her claim for gender discrimination under Title VII and the ACRA must fail as a matter of law.

### B. Retaliation

The Court will now turn to Plaintiff's claim that she was retaliated against when Defendant allegedly ignored her reports that her son was being bullied and replaced her job position when she was suspended, resulting in her constructive termination.

"Title VII prohibits employers from retaliating against employees who file charges of discrimination or who assist others in opposing discrimination." *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). To that end, it is unlawful:

> for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

14

42 U.S.C. § 2000e-3 (2000).[2] A plaintiff employee need not establish that the conduct he opposed was in fact prohibited under Title VII; rather he need only demonstrate that he had a "good faith, reasonable belief that the underlying challenged conduct violated [Title VII]." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000). To survive a motion for summary judgment on a retaliation claim, the plaintiff either must offer direct evidence of retaliation or evidence that creates an inference of retaliation under the *McDonnell Douglas* burden-shifting framework. *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014).

As with the gender discrimination claim, Plaintiff does not provide direct evidence of retaliation. Thus, the Court will analyze Plaintiff's retaliation claim under the three-stage, burden-shifting test set forth in *McDonnell Douglas*. S*ee Hutton v. Maynard*, 812 F.3d 679, 684 (8th Cir. 2016). The plaintiff must first make a prima facie case of retaliation, showing: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). If Plaintiff makes this showing, the burden shifts to Defendant to present evidence of a legitimate, non-retaliatory reason for the action it took. *Smith*, 151 F.3d at 818. "If the defendant makes this showing, the plaintiff must then show that the defendant's proffered reason was a pretext and that illegal retaliation was a motivating reason for the defendant's decision." *Id.*

"To prove a constructive discharge [under Title VII], an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing [her] to quit." *Alvarez*, 626 F.3d at 418. Evidence of the employer's intent can be proven by "direct

---

[2] The ACRA contains an almost identical provision. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 864 (8th Cir. 2009). Therefore, Title VII and ACRA retaliation claims are analyzed under the same framework. *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 477 (8th Cir. 2010).

evidence or through evidence that the employer could have reasonably foreseen that the employee would quit as a result of its actions." *Sanders v. Lee Cnty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012). The employee must also give the employer a reasonable opportunity to resolve the intolerable working condition before quitting. *Id.* Additionally, to establish constructive discharge, a plaintiff must demonstrate that a reasonable person would find the working conditions intolerable. *Tatom v. Georgia-Pac. Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). "The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Id.*

Defendant argues in the instant motion that Plaintiff's retaliation claim does not meet the high threshold set by the Eighth Circuit to support a viable constructive discharge claim. (ECF No. 17, at 16). Further, Defendant argues that there is insufficient temporal proximity between Plaintiff's complaints to the Arkansas State Board of Education and her conversation with Ms. Cheatham to support an inference of retaliation.[3] (ECF No. 17, at 17). Defendant next contends that Plaintiff has failed to show that her working conditions were so objectionable that a reasonable person would deem resignation as the only plausible alternative. (ECF No. 17, at 17). Defendant points out that while Plaintiff's suspension adversely impacted the status of her master's program temporarily, it did not cause her to lose progress, it only paused it. (ECF No. 17, at 17-18). Defendant also points out that Plaintiff understood that she was still guaranteed a non-special education aide position with the school after her suspension. (ECF No. 17, at 17). Defendant then notes that Plaintiff never complained about not being guaranteed a special education assignment to Superintendent Snow. (ECF No. 17, at 17).

---

[3]The Court notes that Plaintiff does not contest this argument in her response.

16

Plaintiff argues that Defendant retaliated against her by ignoring her reports of her son being bullied, and by replacing her position when she was suspended and then not allowing her to be employed in the special education department if she returned. (ECF No. 19, at 19). Plaintiff points out that she was one semester from her degree and her suspension forced her to drop her classes for the semester. (ECF No. 19, at 19). Plaintiff notes that if she is not employed in special education, she is unable to progress in her degree program. (ECF No. 19, at 19). Plaintiff argues that Ms. Cheatham was aware that she had to be employed in special education to progress her degree. (ECF No. 19, at 19). Plaintiff then argues that she did not raise an issue with not being assigned to special education to Superintendent Snow because he was the one who recommended that she be terminated. (ECF No. 19, at 20). Plaintiff further contends that Superintendent Snow relied upon untrue statements when he made the recommendation for termination. (ECF No. 19, at 20).

In its response, Defendant points out that it was Ms. Cheatham's responsibility to fill Plaintiff's special education position because the position could not go unfilled during Plaintiff's suspension. (ECF No. 22, at 13). Defendant argues that Plaintiff sets forth no evidence that Ms. Cheatham's decision was motivated by anything other than her job responsibility. (ECF No. 22, at 13). Defendant also points out that it was undisputed that Plaintiff understood that she was still employed during her suspension and that she was guaranteed a position at the same pay upon her return.[4] (ECF No. 22, at 14). Further, Defendant points out that Plaintiff made no effort to appeal

---

[4] Defendant requests that the Court deem as admitted Defendant's Statement of Undisputed Material Facts ("SUMF") number sixty-eight. (ECF No. 22, at 14). Defendant argues that Plaintiff denies it without citation to the record evidence or reason for the denial. (ECF No. 22, at 14). The Court notes that Plaintiff has already admitted it was her understanding that she would have a job when her suspension was over. (ECF No. 16-1, at 25-26). Thus, the only question before the Court is if Plaintiff "admits" that she would receive the same pay as before her suspension. After denying the entry, Plaintiff states: "[a]dmitted this is Dr. Snow's testimony." (ECF No. 19-1, at 24). This is insufficient to support denying this entry. Plaintiff provides no citation to record evidence or a statement of why this establishes a genuine dispute of fact. Further, the Court can find nothing on the record that would allow an inference that Superintendent Snow intended to change Plaintiff's pay. Thus, SUMF sixty-eight is deemed "admitted." *See Spence*

17

the loss of her special education role to either Superintendent Snow or the district school board. (ECF No. 22, at 14). Defendant argues that Plaintiff had several other reasons to voluntarily resign that dimmish the viability of her constructive discharge claim. (ECF No. 22, at 14).

The Court finds that Plaintiff has failed to establish a claim for retaliation. The Court first notes that the parties seem to presume that Plaintiff's testimony during her appeal hearing regarding allegedly disparate treatment was protected activity under Title VII.[5] Assuming, without determining, that the testimony was protected conduct, Plaintiff nonetheless fails to show that any adverse employment action taken against her was causally connected to that testimony or that she was constructively discharged. There is no evidence that Plaintiff's first asserted means of retaliation, Defendant ignoring that students were bullying her son, had any bearing on her employment conditions and cannot be viewed as an adverse employment action. *See Cole v. Grp Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) ("An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment."). Next, there is no evidence that Defendant's elimination of Plaintiff's position as a special education aide was causally connected to her hearing testimony. Plaintiff's testimony at the hearing occurred after the termination recommendation, demonstrating that an adverse employment action was sought prior to her testimony. Further, Plaintiff relies entirely on assumption when drawing a connection between her being replaced in her former special education position and her complaints of disparate treatment during the appeal hearing. That the change in position occurred after her testimony is insufficient on its own to create an inference of causality. *See Lissick v. Andersen Corp.*, 996 F.3d 876, 883 (8th Cir. 2021) (noting that temporal proximity between a protected act

---

*v. Union Pac. R.R. Co.*, No. 3:17-cv-3074-TLB, 2019 WL 1281244, at *1 (W.D. Ark. Mar. 20, 2019) (finding that the summary judgment movant's asserted facts should be admitted when the nonmovant failed to properly controvert them as required by Local Rule 56.1).

[5]It is unclear to the Court specifically what this testimony was and what Plaintiff is alleging is the protected activity under Title VII.

18

and adverse employment action is generally insufficient to establish a causal connection).

Plaintiff also failed to give Defendant reasonable time to resolve the alleged intolerable working condition—the loss of her position as a special education aide and prevention of employment in special education—before she resigned.[6] It is undisputed that Plaintiff did not report to Superintendent Snow or the district school board and notify them of the intolerable working condition. Plaintiff attempts to argue that it would not have helped to speak with Superintendent Snow. However, "part of an employee's obligation to be reasonable . . . is an obligation not to assume the worst and not jump to conclusions too fast." *Haney v. Hain Celestial Grp., Inc.*, No. 5:19-CV-05108, 2020 WL 1560291, at *4 (W.D. Ark. Apr. 1, 2020) (citing *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 419 (8th Cir. 2010)). Further, she provides no explanation for failure to notify the district school board. Thus, the Court finds that Plaintiff failed to give Defendant a reasonable opportunity to resolve the problem which prevents her from alleging constructive discharge.

Assuming *arguendo* that Plaintiff did give Defendant a reasonable opportunity to resolve the problem the Court still finds that Plaintiff has failed to establish constructive discharge. Defendant guaranteed her a position when her suspension was over. Further, Plaintiff has failed to present evidence that the circumstances at the time of her resignation were objectively intolerable. Critically, Plaintiff never resolves the inherent contradiction of alleging intolerable working conditions with the fact that she was suspended and not working at the time of her resignation. Also, there is no evidence that Plaintiff's progress toward her master's degree was undone by the change in position, only that it was paused. This record cannot demonstrate that

---

[6]The Court also notes that this is the reason stated in Plaintiff's resignation letter. (ECF No. 16-10). Plaintiff provides that when Ms. Cheatham informed "me that I would not be working in the Special Education department upon my return. That means I will not be able to finish my degree. That along with the ongoing stress from situation at the school and how it continues to impact my health, I am resigning effective immediately." (ECF No. 16-10).

Plaintiff's circumstances were "rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Tatom*, 228 F.3d at 932.

Lastly, even if Plaintiff could establish her prima facie case, she has failed to present any evidence that Defendant's explanation for replacing her was pretextual. Defendant presents a legitimate reason for replacing her: that someone needed to work in that special education position during Plaintiff's suspension and that it would be unreasonable and counterproductive to fire that individual after one semester. (ECF No. 22, p. 13). Plaintiff has provided no argument or evidence to dispute that explanation. Accordingly, Plaintiff has failed to establish a prima facie case of retaliation and Defendant must be granted summary judgment on this claim.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 16) should be and hereby is **GRANTED**. Plaintiff's claims hereby are **DISMISSED WITH PREJUDICE**. A judgement of even date shall issue.

**IT IS SO ORDERED**, this 27th day of February, 2025.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge